UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:20-CR-0011-KKC-MAS |
| ) | |
| DAVID GARCIA FLORES, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Defendant David Garcia Flores moves the Court to revoke his Order of Detention. The Court concludes that the United States has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure his appearance in this matter and recommends the District Court deny his motion.

### I. RELEVANT PROCEDURAL BACKGROUND & LEGAL STANDARDS

On January 16, 2020, a grand jury indicted Defendant David Garcia Flores ("Flores") in the Eastern District of Kentucky with three counts of identity-theft related charges in violation of 42 U.S.C. § 480, 18 U.S.C. § 1546(b)(3), and 18 U.S.C. § 1028A(a)(1). [DE 1]. Flores evaded arrest until nine months later when he was apprehended in Tennessee.

On September 21, 2020, the Middle District of Tennessee held a detention hearing. That Court determined Flores poses a risk of flight that cannot be mitigated with release conditions and ordered him detained. [DE 12-14 at Page ID # 65-66]. After obtaining new counsel, Flores appealed that decision on December 11, 2020 pursuant to 18 U.S.C. § 3145. Judge Caldwell referred the matter to the undersigned to make a report and recommendation.

Although the Sixth Circuit has not explicitly ruled on the issue, it has implicitly agreed with the unanimous consensus of circuits that review of a detention decision under § 3145 is

conducted de novo. *See United States v. Romans*, 2000 WL 658042, at *1 (6th Cir. 2000) (affirming a district court's de novo review of a magistrate judge's detention order); *accord, United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990), *United States v. Leon*, 766 F.2d 77 (2nd Cir. 1985), *United States v. Delker*, 757 F.2d 1390 (3rd Cir. 1985); *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985); *United States v. Maull*, 773 F.2d 1479 (8th Cir. 1985); *United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990); *United States v. Garcia*, 445 F.App'x 105 (10th Cir. 2011). Thus, after consideration of Flores's motion, the Court ordered the United States to file a written response and held a full detention hearing on December 17, 2020, to consider the issue de novo.[1]

The United States opposed Flores's motion to revoke the detention order and maintained, as it did initially, that Flores is a flight risk. The Government bears the burden of establishing that detention is warranted. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006).

The Court afforded both parties all procedural rights outlined in the Bail Reform Act ("BRA"). Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof, though, impacts its probative value and ultimate weight in the detention calculus. The §

---

[1] The Court clarifies that this was a de novo hearing on an appeal of the detention decision pursuant to § 3145, not a reopening of the detention decision pursuant to § 3142(f), as the government suggested. Although the undersigned magistrate judge conducted the hearing, rather than the district judge, it does not change the fact that this was a de novo hearing. The procedural difference is that the undersigns issues this Report and Recommendation for Judge Caldwell's adoption or rejection rather than a direct opinion on the matter.

3142(g) factors drive the analysis.[2] There is no applicable detention presumption in this case, based on the charges and other circumstances. *See* 18 U.S.C. §§ 3142(e)(2) and (3).

## II. ANALYSIS

The Court has scant and conflicting information regarding Flores's history. Flores and the person he identified as his spouse in September 2020 did not cooperate with the United States Probation Office ("USPO") in completing the bond interview. The Court denied Flores's request to require USPO to conduct a second bond interview in Kentucky. [DE 27]. Flores told USPO in September that he is married with two dependents, provided a home address in Mt. Juliet, Tennessee, and said he has been self-employed in construction for four years. [Pretrial Services Report at 1-2]. He further stated he was born in Mexico. [Pretrial Services Report at 1]. Flores

---

[2] The subsection directs the Court to balance the following:

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

did not report any mental health or substance use issues. The United States stressed at the hearing and in its brief that the conflicting and muddling information about Flores's past and present life circumstances and the nature of the crimes alleged indicate Flores poses an irremediable flight risk. Additionally, Department of Homeland Security, Immigration and Customs Enforcement ("ICE") has lodged a detainer against Flores, alleging he is not legally present in the United States.

Flores argued that although ICE would take him into its custody if released from United States Marshal custody, he might be able to post an ICE bond and be released on the condition that he be allowed to remain in the United States pending the disposition of this case. Also, at the § 3145 hearing, Flores called Judy Sexton ("Sexton"), Flores's recent fiancé, as a witness. She testified that she has been friends with Flores for about two years and in a romantic relationship with him for about six or seven months.[3] She testified Flores has four brothers and a minor child who live in Morristown, Tennessee, and that Flores also lives in Morristown.[4] Sexton offered to be the third-party custodian of Flores, and stated he could reside with her in Crossville, Tennessee, about two hours from Morristown. On cross-examination, however, Sexton's reliability collapsed. Namely, Sexton testified she did not know any of Flores's friends, she did not know he was arrested in Nashville, did not know his home address, and did not know that Flores had listed a different woman as his "girlfriend" and "next of kin" when he was arrested. Sexton did not attend the detention hearing in Nashville, and she was not even aware at that time that those proceedings were taking place.

---

[3] The Court notes Flores has been detained, primarily in Kentucky, for the past three and a half months.

[4] Morristown, Tennessee is approximately 300 miles from Mt. Juliet, Tennessee, where Flores initially told USPO he resides.

4

The Court has little information with which to analyze the § 3142(g) factors. As to the nature and circumstances of the offenses charged, United States stated in is response that Flores has "proven ability, over the past fifteen years, to deceptively assume an alternate identity and evade responsibility for his wrongdoing." [See DE 28 at Page ID #124]. *See* 18 U.S.C. §§ 3142(g)(1). Although Flores is accused of a non-violent, non-presumption offense, the nature of the crime raises serious concerns about whether Flores would appear at future Court hearings.

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "[T]he weight of evidence against the person 'deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused[.]'" *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (quoting *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). A review of the record, the Pretrial Services Report, the cross-examination of Sexton, and the crimes alleged all indicate the weight of the evidence against Flores's likelihood to appear at future Court dates is heavy. He has no verifiable work history, several potential addresses, supposedly has a wife, a fiancé, and a girlfriend, is alleged to have used false identification for years, and is likely not legally present in this country. This factor favors detention.

The third factor, the "history and characteristics of the person," considers a host of issues including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history. . ." 18 U.S.C. § 3142(g)(3). Flores has lived in Tennessee for at least two years and has family in Tennessee, according to Sexton's testimony. 18 U.S.C. § 3142(g)(3)(A) (identifying family and community ties, as well as length of time spent in community of residence, as weighing in favor of release). The crimes alleged,

5

however, place him in Harrison County, Kentucky, for some period in 2016. [DE 1]. It is entirely unclear to the Court where Flores was residing prior to his arrest. Flores has connections to the Middle District of Tennessee where his brothers and son live, but also to Mexico where his daughter lives. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("[w]hen assessing an alien defendant's ties to the United States, factors to be considered include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens."). Flores suggested he be permitted to reside with Sexton on electronic monitoring. Sexton, though she is his fiancé, seems to barely know Flores and thus would not make an appropriate third-party custodian. Finally, though Flores proposed a hypothetical situation that would result in him being placed on both pretrial release and an ICE bond, it is also possible ICE issues a deportation order for Flores. *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) (stating that the fact "defendant is an alien may be taken into account, but alienage does not by itself 'tip the balance either for or against detention'"). The Court would have no control over any ICE action, and Flores's potential deportation would, effectively, mean he evaded prosecution in this case. On a positive note, Flores has no criminal history, or apparent history of substance use. These positive facts, however, are insufficient to outweigh Flores's many characteristics that make him a flight risk.

      The final BRA factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The United States concedes that because it moved for detention based on risk of nonappearance, this factor does not really apply to Flores. There is no information that indicates Flores poses a risk of danger to the community. The United States points out that he could continue his illegal activity if

6

released. The Court does not minimize the seriousness of the crimes alleged; however, Flores does not pose a danger to the community the way a violent or drug offender does. To the extent Flores would pose any type of danger if released, the Court believes it could mitigate that danger with conditions. The Court finds that this factor weighs in favor of Flores's release.

Based up on an examination of the entire record, the proffer and testimony at the hearing before the undersigned, and the Pretrial Services Report, the Court finds the United States established by a preponderance of the evidence that that Flores poses a risk of flight or nonappearance. The Court cannot craft any conditions or combination of conditions to mitigate the risk that he will fail to appear if released.

Because the United States did not move for danger-based detention, and because the Court has already determined flight-based detention is warranted, the Court need not further analyze the danger Flores would pose if released.

### III.  CONCLUSION

For the stated reasons, the Court finds that the United States has proved by a preponderance of the evidence that no conditions could ensure Flores's future appearance at Court proceedings. Accordingly, the Court **RECOMMENDS** the District Court **DENY** Flores's Motion to Revoke the Detention Order.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(a) concerning the right to appeal to the District Court. Failure to object timely to this Recommended Disposition will typically waive that party's right to review.

Entered this the 30th day of December, 2020.

Signed By:
<u>Matthew A. Stinnett</u> *MAS*
United States Magistrate Judge